There are a number of issues before the court, and I would submit initially that I think that the briefs cover them all. I would like just to highlight a few of them, and then we'll move on to the next item. I would like to highlight what I regard as the more important issues. The district court found that an appellant had not made a prima facie case of racial discrimination, and as we asserted in the briefs, the district court, we assert, misinterpreted the standard to present a prima facie case. The error that the district court misstated is the fourth element of a prima facie case of employment description, of employment discrimination. The district court acknowledged Allen's evidence that 18 applicants were hired in the year 2000 at the same time Allen was being rejected, but held that Allen had to offer evidence that all the other applicants had similar problems at the background stage. Let's assume that Mr. Allen established a prima facie case of discrimination. Why isn't the county's stated reasons for not hiring him non-discriminatory? Why haven't they met that burden? Well, first of all, Your Honor, I think that the stated reasons are disputed, and that the district court was in error because it resolved disputed issues. For example, it's disputed that he failed a polygraph? It's disputed that he failed a background investigation. It's disputed initially. How about starting with my question? Is it disputed that he failed a polygraph? Well, I... It seems to me the answer to that is either yes, no, or I don't know. I think there is evidence that there was some shaking of the needles when he answered certain questions on a polygraph. It certainly calls into question as to whether or not the polygraph examination has any validity whatsoever to prove anything. Is it disputed that he had an arrest record? It is not disputed that he had an arrest record. Including an arrest for kidnapping. Pardon me, Your Honor? Wasn't one of the arrests for kidnapping? Yes, it was. And that's not disputed? That is disputed. It's not disputed that he was arrested. It's disputed that it was relevant to the background information when he had a finding of factual innocence on that matter. So in a sense it was a false arrest. So a background investigation, a competent background investigator would explore that and determine the facts and then make a conclusion, not simply look at a record and say, oh, there's an arrest, and therefore he's automatically disqualified. Your position is that although the county may have come back with facially nondiscriminatory reasons for not making the hire, there are disputed factual questions about that? Yes, Your Honor. That's exactly what we're saying. And it's also disputed that in 1997 and the year 2000 that the Sheriff's Department even conducted a background investigation. It appears from the declaration of Mark Sutherland that all he did was review other memos. He did not conduct the kind of background investigation that POST requires for a peace officer position. The POST guidelines for conducting background investigations are included in the excerpts, and it's fairly obvious from Mark Sutherland's declaration he did not follow those guidelines at all. He simply looked at some background materials, he cherry-picked what he wanted to, and then made a summary which was consistent with the summary that he reviewed of Officer Goodman, who also conducted the background in 1997. And Officer Goodman, of course, is the person who compared Mr. Allen to O.J. Simpson in regard to the arrest for kidnapping, that Mr. Goodman felt that Plaintiff Allen or Appellant Allen had gotten off in a similar manner of O.J. Simpson. And we're characterizing that as a racial comment and that Mr. Goodman shows that there was an inference. In other words, an inference is created by that comment at the time that Goodman has been ordered to go back and look at it because of that. Why is an inference created by that? Oh, pardon me, Your Honor. Why is an inference created by that? Why is that an inference? Uh-huh. Well, why is it a proper inference that any time somebody is said to have a situation similar to O.J. Simpson, it must be racial? Well, Mr. Allen took it as racial, so I think that's important. And it was uttered. I didn't hear what you said. Mr. Allen what? Oh, pardon me? I didn't hear what you said. Mr. Allen what? Mr. Allen regarded it as a racial comment that he was being compared to a notorious black person that avoided a serious crime. Is it racial because he so regarded it? Oh, pardon me, Your Honor? Is it racial because he so regarded it? I think it's racial. I mean, I — If I say to somebody, you're a turkey, and that person happens to be a Spaniard and says to himself, that's a racial comment, it is? I think it's an inference of discrimination. I mean, it's probably debatable whether it's a blatantly racial comment. But made in the context of Mr. Goodman being ordered to review that arrest, and Mr. Goodman having made his own mine-up about the validity of that arrest after the courts had adjudicated the matter and finding a factual innocent, it was an extremely emotional experience for Plaintiff Allen to be told that, even though he was innocent of the alleged kidnapping charge, that the sheriff's department in the person of Mr. Goodman, who did not investigate that matter, came to a different conclusion and rejected him because of that. So, I mean, I would urge the Court to strongly consider that that's an inference of discrimination. And not so much that it's an inference of discrimination, but to view this second part of the case, namely whether or not the county showed a nondiscriminatory reason for rejecting him, that that was disputed. That's the point I'm trying to make, is that the entire matter and the way it was conducted is fiercely disputed by Allen. What about his varying answers to the question of drugs? Well, first of all, if you put these things together, I suppose you could say that they're all different answers. I mean, if you look at the fact that he says yes one time and no another time, then you could irrationally decide that those are different answers? Because it could be yes and no at the same time? Is that what you're saying? I think that matter needs to be explored by the background investigator. And one of the arguments that we have made is that a competent background investigator would resolve those discrepancies. How do I resolve a discrepancy when somebody says, no, there weren't drugs, and in a different time says, yes, I did use drugs? How do I resolve the discrepancy that sometimes it's yes and sometimes it's no? I think you resolve it by- You're calling it a discrepancy. How do I resolve the antinomy? Well, one of the ways you might resolve it is determine that the person just forgot what they put on the other application. And then- What he put on the application is what he has in his head. Well, but what he has in his head is asking him to remember what he did nine or ten years before, and it's asking a person who doesn't use drugs at all if he ever used drugs, and he's trying to remember being exposed to one single instance of being asked to take a puff on a marijuana cigarette when he's either nine or ten years old or 13 or 14, and this is a person who has been drug-free since that time, and yet the sheriff's office in their memo concluded that he lied about drug use. Well, the standards for the sheriff's department right now are that if you haven't used marijuana up until 12 months before the time that you are being asked about it, then you're not going to flunk the background based upon past use of drugs. Now, here's the whole entire purpose of that question on the polygraph in the background, is to determine whether or not the person ever used illegal drugs. And this is a person who's relatively drug-free and is trying to recall a single instance of exposure to marijuana. That's the kind of thing that a background investigator would explore in an interview, a discrepancy interview with the applicant, and that's the kind of analysis that is printed in the materials when Deputy Rumley did his background and passed him when he applied for the position of reserve deputy sheriff in 1995. He passed that background, and he had all of the same discrepancies in the interview. Maybe you're getting the point I was interested in, but you keep using the phrase a competent background investigation. That's far different from discrimination. That's a case of negligent investigation, perhaps, but if you accept the facial answers, and I understand you dispute those, you say, well, your answer is sort of yes, but. I mean, we have in terms of the polygraph, the arrest, the varying answers, you say yes, but they were explainable. But how do you get from there to pretext if you have a legitimate nondiscriminatory background investigation? What's your best argument on pretext? Because so far you're just saying, look, if they just looked into it, he would have passed. I don't think that's quite enough. I mean, I think a part of the pretext is, number one, that he had already been hired by the same department. I think that they cannot explain how there are two different conclusions from basically the same facts, particularly when the conclusion that the second person relies on is not based upon what I call a competent investigation. And I would agree with you, if that's all there were, that would be fine. But when that person ---- Is there proof in the record that there were other applicants similarly situated to your client who had similar, let's call them discrepancies in their application, that were in fact backgrounded in a competent way and hired? Well, first, I think there's sufficient evidence. There's not enough evidence to my liking, but that's because the county, if you notice in the appeal, there is a, you know, some huge disputes over discovery. We were denied discovery of those issues. And I think that's the proof that's in the record that meets what I just described in my last question. There is one individual whose name is Watson who was hired by the sheriff's office around about the same time, or shortly thereafter, who was white, who was actually fired by the Department of Corrections for excessive force. And before he went to arbitration on the matter, and it was a final determination subject to appeal and arbitration, the sheriff's office hired him. And that would certainly constitute a serious issue in the background investigation in terms of present employment. Now, the same county and the sheriff's office, which essentially had some kind of jurisdiction over the Department of Corrections, had a jurisdiction over the Department of Corrections. And so that's not a case where he subsequently lost his job. So was that a case where they knew about it and hired him anyway or found out about it and then investigated it and determined Let me finish my question. And determined that it was not a disqualifier? Is it A or B? A. They knew about it. They hired him anyway. Yes. That's not a case where there were problems and there was a competent background and someone not of color was hired, right? That's correct. Okay. Now back to my initial question. Is there any proof in the record of anyone in a circumstance similar to Mr. Allen's who had what appeared to be problems that were a competent background investigation was done and a white person, for example, was hired? Is there any such proof in the record? There is no such proof in the record, Your Honor. You're down to about a minute and a half. Do you want to save some time for rebuttal? I would like to. It's up to you. It's your time. I've got one minute. Is that what you're saying? That's correct. Yes. I would like to reserve a minute. Thank you very much for your argument. Mr. Dodd? Good morning and thank you. I want to come back to the point that the Court emphasized with Mr. Clisham. We believe, of course, that we adequately established that Mr. Allen was neither qualified nor suffered any discrimination. But I think we don't have to talk about that because the reason that the county provided for why it did not hire Mr. Allen as the deputy sheriff is essentially undisputed. He has in his background, and has had in his background, repeated instances where he offered inconsistent responses with regard to the drug use questionnaires. He failed two polygraph examinations. Excuse me. He has a number of instances where he was arrested. And, indeed, I would submit that with regard to that kidnapping arrest, that was not necessarily something that informed the decision by the time we get to 2000. Certainly he had been arrested, but the county knew and understood that he had been exonerated of that charge. But that was not the only thing in his background of where he had had run-ins with the law. And the case of the ---- But you can't refer to enough. Because it's not evidence. If memory serves, that testimony came in through Mr. Allen himself and or perhaps another witness who has no personal knowledge of that instance, has no basis whatsoever to make the claims that were put before you this morning. And, indeed, all of that evidence was objected to. And the objections are noted in our brief. The district court excluded all of that evidence. Mr. Allen testified at length about numerous instances of people that he thought were treated differently than him. And we objected on, you know, hearsay, speculation, all the appropriate grounds. And those objections were sustained. And those objections, that's the district court's ruling on that evidence has not been challenged on this appeal. So one must assume that they accepted, then, that that evidence is really not before the court at all. So I don't believe that that's in the record for purposes of this case. And, indeed, there is no ---- How do you respond to the argument that Mr. Allen passed the background checks previously? Two responses. And, in fact, they are not the same. He passed a background investigation when he was hired as a corrections officer. There is no evidence that the corrections background investigation is equivalent to that of a deputy sheriff, nor would it make any sense since corrections officers are not peace officers under California law, as deputy sheriffs are. There's also evidence in the record that is essentially undisputed, that when he sought employment as a reserve deputy sheriff, that the standards for hiring and looking into reserve deputies was a little different, was not as exacting as for deputy sheriffs, and that's undisputed and the district court so found. And, indeed, the people doing those investigations at the time he was hired as a reserve were not trained by post, unlike when he actually applies for a deputy sheriff position. So we don't have evidence, or they did not put in evidence, that they were equivalent or the same background types of investigation. They may have shared some similarities, but they were not the same. Furthermore, there were incidents that came up in 1996 and then in 2000 when he applied that were not included within the background investigation when he was hired as a reserve deputy. Notably, there was a workplace incident where he lied, essentially, about where he was. He said he was at a family thing when, in fact, he was off at something else. And then there was a whole interchange he had with the sheriff herself in 2000 while he was applying where he essentially lied to people about what the sheriff had told him about getting a concealed weapons permit. And those were two issues that came up subsequent as part of this process that would not have happened before the folks when he was hired as a reserve. And it's interesting, I think, on that point, is that when you get the background investigator, Mark Sutherland, who made the first-line decision in 2000, Mr. Sutherland or Officer Sutherland looked at the background in 1999 and independently drew his own conclusion that Sean should never have been hired as a reserve. So he was consistent throughout. He said, I don't think he should have been hired as a reserve. He's got too much stuff in his background. And then these other incidents came up later as part of the process. So there's no question that the person actually making the decision in 2000 had a consistent view, having looked at the record twice. With regard to the issue as to whether he did a competent background, I think Your Honor's point is exactly right. If they have a problem with the way in which the background was undertaken, they should have deposed Officer Sutherland. They didn't do that. They didn't depose him to ask what he'd done and how he did it differently with somebody else perhaps. They didn't undertake that discovery. And they knew who Sutherland was. They could have deposed him. They chose not to. Likewise, with regard to the question of whether people, other white officers, for example, were treated differently at the background stage, they never asked for any background information from any other officers. It just – that's just not in the record. And it's not in the record because they never asked for it. So they didn't under – they didn't do the work they needed to do if they thought there was a question of fact. They just want to sort of throw these things up in the air as if there's some problem or sort of raise issues that aren't issues at all. And we submit that they have not come up with evidence of any pretext. I mean, the law is pretty clear that any evidence of pretext both in the Ninth Circuit and in California, and of course California law applies to this particular claim, is that it's got to be specific and substantial. It's got to be enough for somebody to conclude that a prior fact could say, oh, well, that explanation just doesn't make any sense. And there's nothing in this record. It's – there's nothing to suggest that either Sutherland or Captain Smedland, who looked at this, who looked at Mr. Allen's record, was motivated in any fashion by anything other than they were concerned about his background. We had evidence in the record from Lieutenant Pete Rohde, for example, who was the 30B6 witness, who testified at some length, and we quoted it in the brief, testified at some length about why it is that the Sheriff's Department doesn't want people with evidence in their background of inconsistent responses, particularly when they're under oath, get in front of some trier of fact in a criminal trial. And that stuff is potentially out there for defense attorneys to utilize and destroy the credibility of the officers. So the Sheriff's Department doesn't want to hire somebody from the get-go who has that kind of material in their background. Roberts. I think we understand your argument. Why don't we hear the rebuttal argument? Right. Unless there's anything else on any of the other issues. I don't think there is.  Thank you. Counsel. Yes, thank you, Your Honor. Just a couple of comments. One is that we did attempt to find out information in regard to non-African applicants at the time. I'm just reading from our opening brief. Counsel for the county instructed the county's 30B6 deposition witness not to answer questions about the backgrounds of seven non-African American individuals hired by the sheriff's office. That was part of our motion to compel production of this information, and the district court denied that without explanation. So it's not correct that we tried to do this. I hate to use these words, but I think it's appropriate in my final comment here. I think the kinds of details that you have here where somebody goes into a file, finds something, and then simply makes up their mind is purely subjective. They didn't conduct a competent background. I think it's the lynching of Sean Allen by the sheriff's office in regard to the background. I think he was competent. He was a competent employee. He did a terrific job as a reserve deputy sheriff, and I think the fact that he was black is the only reason he was rejected. Okay. Thank you for your argument. Thanks to both counsel for their argument. The case just argued will be submitted for decision and will proceed to Werft against Desert Southwest Annual Conference of the United Methodist Church.
judges: Fernandez, Hawkins, Thomas